```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION

CHAUCER CORPORATE CAPITAL,      §
NO. 2 LIMITED,                  §
     Plaintiff,                 §
                                §
v.                              §    CIVIL ACTION NO. 10-180
                                §
HARDAM S. AZAD D/B/A            §
FIVE MILLION SQUARE FEET        §
COMPANIES; HOUSTON SHOPPING     §
CENTER MANAGERS, LP D/B/A       §
COM REALTY AND SOUTH VILLAGE    §
SHOPPING CENTER; CONTINENTAL    §
BALLROOMS, INC.; TRADING FAIR   §
IV, INC.; TRADING FAIR III,     §
INC.; TRADING FAIR HOUSTON,     §
INC.; THE TOMBALL CENTER, INC.; §
AND WEBSTER/MARINAGATE, INC.    §
                                §
     Defendants.                §
```

MEMORANDUM AND ORDER

Pending are Defendants' Joint Motion to Dismiss Amended Complaint (Document No. 5) and Plaintiff Chaucer Corporate Capital, No. 2 Limited's Motion to Compel Appraisal on Business Income Claims (Document No. 16). After reviewing the motions, responses, and the applicable law, the Court concludes as follows.

I. Background

This is an insurance contract dispute filed by Plaintiff Chaucer Corporate Capital No. 2 Limited ("Chaucer"), on its own behalf; Chaucer is the lead underwriter of Certain Underwriters at Lloyd's of London severally subscribing to Policy No. AMR-21528 (the "Policy"). Defendants, who are insured under the Policy, submitted a property loss notice for alleged damage caused by

Hurricane Ike to six commercial properties in the Houston area.[1] Chaucer appointed independent adjusters to determine the extent of damage to the properties; Defendants used a public adjuster, Balance Loss Consultants ("Balance"), to provide information and estimates to the independent adjusters.[2]  Although the Policy contains a total deductible of over $1.8 million, Chaucer approved advance payments of $1 million on November 20, 2008, and $636,874.34 on December 31, 2008, for use in emergency repairs and restoration of the properties damaged by Hurricane Ike.[3]

Chaucer alleges that the independent adjustors it hired attempted to investigate fully the extent and cause of damage to Defendants' properties through September, October, and November of 2008; however, they were not able to agree with Balance on the amount of loss.[4]

Defendant Hardam S. Azad ("Azad") demanded appraisal of the loss and submitted a proof of loss for over $11 million by letter

---

[1] *See* Document No. 4 at 4.

[2] Id.

[3] Id. at 4, 12.  Among the November advance payments were five checks totaling $338,382.00 for advance payments on emergency repairs required to be made to the property located at 630 West Little York, owned by Defendant Trading Fair IV.  This sum is the subject of related Civil Action No. 09-2701, an interpleader action filed by Chaucer, and from which the present action was severed at the request of the parties. Chaucer Corp. Capital, No. 2 Ltd. v. Village Contractors, Inc., No. 4:09-cv-2701 (S.D. Tex. filed Aug. 21, 2009) (Memorandum and Order Dated Sept. 15, 2010).

[4] Document No. 4 at 6-7.

dated January 22, 2009.[5]  The proof was rejected on February 12, 2009; Chaucer then caused to be appointed an independent appraiser to determine the loss amount in response to Azad's demand.[6] Defendants likewise appointed an appraiser, and, pursuant to the terms of the Policy, the two appraisers agreed to an umpire.[7]  They ultimately agreed to an additional sum of $263,582.39 to be paid for replacement cost values and actual cash values of damages to each property; Chaucer and Defendants subsequently further engaged in appraisal of Defendants' physical damage claim and, subsequently, its business interruption claim.[8]

Nonetheless, Chaucer asserts that some coverage issues cannot be resolved outside of court.  It seeks a declaratory judgment on the disputed scope of coverage under the Policy--including approximately $700,000 of business losses for which it asserts no

---

[5] Id. at 7.

[6] Id. at 7-8.

[7] Id. at 8.

[8] Document No. 16 at 2.  On June 4, 2010, Chaucer moved to compel Defendants to appoint an appraiser for their business income claims, asserting that they had failed to do so. Document No. 16. In response, Defendants asserted that they believed there was no need to appoint an appraiser for the business income claims in addition to an appraiser for the physical damage claims. Document No. 17 at 2-3. However, Defendant Azad nonetheless designated Clay Morrison as Defendants' appraiser for the business income claims. Id. at 3. Chaucer's Motion to Compel Appraisal on Business Income Claims (Document No. 16) is therefore DENIED AS MOOT.  Former state district court Judge Mark Davidson's appointment as Umpire, by Order dated May 11, 2010, applies also to Defendants' business income claims.

documentation has been provided, and losses incurred due to Defendants' failure to protect their properties.[9] Chaucer further asserts that Defendants breached the insurance contract by: failing to provide material information relating to their claims; failing to take "reasonable steps to protect the property from further damage and by neglecting to use all reasonable means to save and preserve the property from further damage"; and by diverting the advances paid out for the purpose of emergency repairs to "other purposes or to retire indebtedness to lending and financial institutions."[10]

## II.  Discussion

Defendants assert that Chaucer's complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(7) because of a failure and inability to join all necessary parties as per Rule 19,[11] based upon Chaucer's not having joined all of the Lloyd's Underwriters as plaintiffs and hence, not having shown complete diversity of citizenship between itself and Defendants.  If the other underwriters need not be joined, complete

---

[9] Document No. 4 at 10, 13-14.

[10] Id. at 10-12.

[11] Document No. 5 at 2-3, 7.

diversity exists between Chaucer, a citizen of the United Kingdom, and Defendants, all citizens of Texas.[12]

A.   Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.  *See* Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).  In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations.  *See* id.

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks.  *See* Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings.  Id.  When presented with a facial

---

[12] Document No. 4 at 1-3.

challenge to subject matter jurisdiction, a court examines whether the allegations in the pleadings are sufficient to invoke the court's subject matter jurisdiction, assuming the allegations to be true.  Id.  When accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack.  Id.  "A 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980); Taylor v. Dam, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003).  A party responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.  Paterson, 644 F.2d at 523.  Nevertheless, uncontested factual allegations in the complaint are taken as true. Russell v. Choicepoints Servs., Inc., 302 F. Supp. 2d 654, 659 (E.D. La. 2004) (citing Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001)).

Rule 12(b)(7) permits dismissal of an action for "failure to join a party under Rule 19."  FED. R. CIV. P. 12(b)(7).  "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue."  HS Res., Inc. v. Wingate, 327 F.3d 432, 438 (5th Cir. 2003).  It also "provides for the dismissal of litigation that

6

should not proceed in the absence of parties that cannot be joined." Id.

The application of Rule 12(b)(7) involves a two-step inquiry under Rule 19. *See* id. at 439; Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 1986). "First, Rule 19(a) provides a framework for deciding whether a given person should be joined. Second, if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." Pulitzer-Polster, 784 F.2d at 1309. The movant has the burden to show its entitlement to relief under Rule 12(b)(7). *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359, at 67 (3d ed. 2004); HS Res., 327 F.3d at 438 n.11.

B.   The Absence of Other Underwriters

Defendants point to Chaucer's not having joined the other underwriters on the Policy, asserting that all are required parties that must be aligned on the interpleader plaintiff side.[13] If the other underwriters are required, Chaucer's failure to join them leaves open the possibility that complete diversity is lacking if any underwriter on the Policy is a citizen of Texas. Moreover, a

---

[13] The Court has already ruled on an identical contention in the related interpleader action. *See* Document No. 115, Chaucer Corp. Capital, No. 2 Ltd. v. Village Contractors, Inc., No. 4:09-cv-2701 (S.D. Tex. filed Aug. 21, 2009) (Memorandum and Order Dated Sept. 15, 2010).

7

failure to join these parties may warrant dismissal under Rule 12(b)(7).

Determining the proper parties to a suit involving a Lloyd's policy requires a brief overview of the structure of Lloyd's of London.  It is not an insurance company; rather, it is "a self-regulating entity which operates and controls an insurance market." Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003) (citing John M. Sylvester & Roberta D. Anderson, Is It Still Possible to Litigate Against Lloyd's in Federal Court?, 34 TORT & INS. L.J. 1065, 1068 (1999)).  A group of anonymous underwriters called "Names" band together in Syndicates; each Syndicate in turn nominates one of its Names to represent all of that Syndicate's Names' interests.  Corfield, 355 F.3d at 858; E.R. Squibb & Sons, Inc. v. Acc. & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998). The Syndicates are not considered to have their own legal identity. Squibb, 160 F.3d at 929.  In practice, many Names from several Syndicates join together to underwrite a policy, each Name being severally--not jointly--responsible for a particular share of the policy, as the policy is "actually a collection of many bilateral contracts running between the insured and each Name."  Corfield, 355 F.3d at 864; Squibb, 160 F.3d at 929, 937.  That is, each Name takes upon itself only a *share* of the total risk.  *See* Corfield, 355 F.3d at 864.

> When litigation over a Lloyd's policy occurs, only one Name (the lead underwriter disclosed on the policy) is ordinarily sued. Nevertheless, all the Names subscribing to that policy are liable for their several shares of any adverse judgment against the Lloyd's underwriters. This is because the standard Lloyd's policy running between the insured and each Name states "that in any suit instituted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." Each Name is, therefore, bound by contract with the insured to adhere to the decision reached in the suit.

Squibb, 160 F.3d at 929.[14] However, due to the nature of the relationship between each Name and the insured--that of a series of bilateral contracts--the Names' responsibility to abide by a judgment against any other Name on the same policy runs *vertically* between that particular Name and the insured, not *horizontally* from Name to Name, as would be analogous to a partnership. *See* Corfield, 355 F.3d at 862 (discussing Squibb, 160 F.3d at 937).

The Second Circuit in Squibb held that the citizenship of *every* underwriter on a Lloyd's policy is relevant to diversity jurisdiction when the lead underwriter sues as a *representative* of all the policy's underwriters. Id. at 928, 931. However:

> The Second Circuit rejected the notion that the non-party Names' citizenship would have to be considered simply because they too would be bound by whatever judgment is rendered against the only Name sued. The Second Circuit reasoned that a federal court does not lose jurisdiction simply because a non-diverse non-party is contractually

---

[14] The same standard policy language appears in the Policy. Document No. 53 at 6.

> bound to indemnify the diverse parties. As long as the party being sued is a real party to the controversy, the fact that the case will determine the rights of non-diverse litigants through collateral estoppel or preclusion does not affect jurisdiction. Because the lead underwriter is severally liable on the policy, he is a real party to the controversy. Thus, where he appears in the litigation solely on an individual basis, only his citizenship need be considered.

Corfield, 355 F.3d at 861 (discussing Squibb, 160 F.3d at 936-37) (citations omitted). The Fifth Circuit, upon reviewing holdings on related issues in the Third, Sixth, and Seventh Circuits, agreed with the analysis in Squibb, holding that where an underwriter on a Lloyd's policy sues or is sued in its individual capacity, only its own citizenship is relevant to a diversity inquiry. Corfield, 355 F.3d at 860-64 & 864 n.9. Moreover, other underwriters subscribing to the policy are not essential parties to an individual underwriter's suit brought on its own behalf. *See* id. at 864-66 (discussing the principles supporting the conclusion that a Name can sue and be sued individually). Nonetheless, the individual underwriter must still be able to satisfy the amount-in-controversy requirement through the portion of the policy for which it is severally liable. *See* id. at 864.

Here, Chaucer, the lead underwriter, has brought suit on its own behalf.[15] Therefore, no other parties need be joined, and only Chaucer's citizenship and the amount in controversy with respect to

---

[15] Document No. 4 at 1.

10

Chaucer is relevant to a diversity inquiry. Chaucer subscribes to 15 percent of the Policy, which has a limit of $37,145,318.69; accordingly, its potential liability under the Policy is $5,571,797.79. The complaint alleges that Chaucer and Defendants dispute the payment of over $700,000 claimed in business income losses alone.[16] Even without consideration of the potential value of other disputed claims under the Policy, or of Chaucer's cause of action for breach of contract, this satisfies the amount in controversy requirement.[17] Thus, Chaucer has also met the minimum amount in controversy requirement, and the Court's diversity jurisdiction is established.

---

[16] Id. at 10.

[17] Even assuming that Chaucer is only liable for 15 percent of the $700,000--$105,000--it would satisfy the amount in controversy requirement. However, as explained above, Chaucer's potential liability to Defendants is over $5 million; it could thus be held liable to Defendants for the entire $700,000. Mark Benton, Deputy Claims Manager for the entity that handles property underwriting and claims for Chaucer, states in his affidavit that contractual agreements between the Names on the Policy bind them "to pay their participation percentage of sums due and owing in the event a judgment is entered against Chaucer." Document No. 9-1 at 3. That others are bound to indemnify Chaucer does not lessen *Chaucer's* full liability for any of the business loss or other claims for which Chaucer may be adjudged liable to Defendants. *Cf.* Corfield, 355 F.3d at 861 ("[A] federal court does not lose jurisdiction simply because a non-diverse non-party is contractually bound to indemnify the diverse parties." (discussing Squibb, 160 F.3d at 936-37)).

III. <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendants' Joint Motion to Dismiss Amended Complaint (Document No. 5) is DENIED, and Plaintiff Chaucer Corporate Capital, No. 2 Limited's Motion to Compel Appraisal on Business Income Claims (Document No. 16) is DENIED AS MOOT.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this <u>20th</u> day of September, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE